UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| CURTIS JOHNELL VINES,<br>    Plaintiff, | :<br>:<br>: |
| v. | :    Case No. 3:18cv1432(MPS) |
| | : |
| PHYSICIAN ASSISTANT KEVIN<br>MCCRYSTAL, ET AL.,<br>    Defendants. | :<br>:<br>:<br>: |

**RULING AND ORDER**

The plaintiff, Curtis Johnell Vines, is currently confined at Cheshire Correctional Institution. He initiated this action by filing a civil rights complaint against Physician Assistant ("PA") Kevin McCrystal, Correctional Officer Olivio, and Correctional Officer Barrows.

On November 19, 2018, pursuant to its review of the complaint under 28 U.S.C. § 1915A(b), the court dismissed the claims for damages against the defendants for violations of federal law in their official capacities, the negligence claim against the defendants in their individual and official capacities for monetary damages, the request for a declaration that the defendants violated federal law, and the request for a declaration that the defendants' alleged negligent conduct violated the plaintiff's rights under Connecticut law, and dismissed without prejudice the Eighth and Fourteenth Amendment claims against PA McCrystal in his individual capacity. *See* Initial Review Order ("IRO"), [ECF No. 14], at 12-13. The court concluded that the Eighth Amendment deliberate indifference to medical needs claim would proceed against Correctional Officer Olivio and Correctional Officer Barrows in their individual capacities. *See id.* at 13.

The court permitted the plaintiff to file an amended complaint, within thirty days, to address the deficiencies in the allegations against PA McCrystal as outlined in the court's ruling.

*See id.* In response to the court's ruling and order, the plaintiff has filed two letters with attached exhibits. The Clerk has docketed the letters as Notices. *See* First Notice, ECF No. 15; Second Notice, ECF No. 16. The Notices are unsigned and do not include a case caption with the name of the court and the parties to the case, a request for relief, or any allegations against the other two defendants, Officers Olivio and Barrows. *See id.* Thus, neither Notice constitutes a properly filed amended complaint. Even if the court were to construe the Notices as amended complaints, the allegations in the Notices do not state plausible claims that PA McCrystal violated the plaintiff's Constitutional rights.

## I.     Standard of Review

Under 28 U.S.C. § 1915A(b), the court must review prisoner civil complaints against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." *Id.* Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial

plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). Although courts still have an obligation to interpret "a *pro se* complaint liberally," the complaint must include sufficient factual allegations to meet the standard of facial plausibility. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

## II. Facts

The complaint included the following facts: On April 4, 2017, at MacDougall-Walker Correctional Institution ("MacDougall-Walker"), the plaintiff injured his left knee playing basketball. Compl. at 6 -7 ¶¶ 1, 6 & at 28. The plaintiff could not move his left leg or foot or "stand without falling down." *See id.* at 6 ¶ 1. An officer called a "medical code" and medical staff members transferred the plaintiff to the medical unit. *See id.* PA McCrystal examined the plaintiff's knee, prescribed ibuprofen for the pain, and directed a nurse to wrap the plaintiff's knee and provide him with crutches. *See id.* ¶ 2. A Medical Incident Report and Nursing Sick Call note indicate that PA McCrystal also referred the plaintiff for an x-ray of his left knee. *See id.* at 28, 35-36. The plaintiff informed PA McCrystal and the nurse that he believed that the injury to his knee could not be "fix[ed]" with ibuprofen, but they would not listen to his opinion and sent him back to his housing unit. *See id.*

That evening, at the dinner meal, the plaintiff asked Correctional Officers Olivio and Barrows to contact the medical department because the pain in his injured knee was severe. *See id.* ¶¶ 3-4. Neither Officer Olivio nor Officer Barrows would contact or arrange for him to be sent to the medical department. *Id.* The plaintiff was unable to sleep during the night of April 4, 2017, and early morning hours of April 5, 2017, because his knee was so painful. *See id.* ¶ 3. During the morning of April 5, 2017, after convincing correctional staff that he was experiencing

3

the worst pain that he had ever experienced in his life, the plaintiff underwent an x-ray of his left knee. *See id.* at 7 ¶ 5. During a visit the medical unit later that morning, a nurse explained to the plaintiff that he had "broke[n]" his knee "in half." *See id.* At approximately 9:45 a.m., correctional officers transferred the plaintiff to the University of Connecticut Medical Center ("UCONN") for surgery. *See id.* ¶ 6 & at 22, 24. A surgeon "put two screws in [the plaintiff's] left knee." *See id.* ¶ 6. Three days after the procedure, hospital officials transferred the plaintiff back to MacDougall-Walker. *See id.*

On May 16, 2017, the plaintiff filed a "medical grievance" regarding PA McCrystal's treatment of his knee injury. *See id.* ¶ 9 & at 12. On June 25, 2017, PA McCrystal denied the grievance. *See id.*

There are no new facts in the First Notice. *See* Notice, ECF No. 15. In the Second Notice, the plaintiff alleges that on May 1, 2017, he had an appointment with PA McCrystal. During the appointment, PA McCrystal observed no evidence of an infection in his left knee. *See* Notice, ECF No. 16, at 1. Six days later, on May 7, 2017, Dr. Naqvi prescribed "Cipro because [the plaintiff's] knee was infected." *Id.*

**III. Discussion**

The First Notice may be liberally construed as including an Eighth Amendment and a Fourteenth Amendment claim against PA McCrystal. The Second Notice may be liberally construed as including a First Amendment and an Eighth Amendment claim against PA McCrystal.

  **A. First Notice – Eighth and Fourteenth Amendment Claims**

The plaintiff contends that PA McCrystal violated the Department of Correction's

4

Administrative Directives by responding to his health services grievance. He contends that the Health Services Review Coordinator should have reviewed and responded to the grievance and entered the grievance and the response in a log. The plaintiff raised this same claim in the complaint and the court dismissed it. *See* IRO at 10-11 ("To the extent that the plaintiff claims that PA McCrystal failed to properly comply with Department of Correction Administrative Directive 9.6 by processing and responding to his inmate grievance pertaining to his past medical treatment, rather than permitting another medical staff member to process and respond to the grievance, such a claim does not rise to the level of a violation under the Fourteenth Amendment.") (citing *Brown v. Graham*, 470 F. App'x 11, 13 (2d Cir. 2012) ("Brown's argument that he has a federally-protected liberty interest in the state's compliance with its own prison grievance procedures is meritless.")). For the same reasons set forth in the court's IRO, any renewed Fourteenth Amendment claim asserted in the First Notice against PA McCrystal for not properly complying with the health services grievance procedures is dismissed for failure to state a claim. *See* IRO at 10-11; 28 U.S.C. § 1915A(b)(1).

The First Notice adds no new facts regarding PA McCrystal's examination and treatment of the plaintiff's knee injury on April 4, 2017. The plaintiff alleges that after he initially injured his knee on April 4, 2017, he experienced pain in his knee for twenty-four hours before he underwent an x-ray of his knee and was sent to UCONN for surgery on April 5, 2017. *See* Notice, ECF No. 15, at 2.

The plaintiff alleged in the complaint that after he injured his left knee on April 4, 2017, medical staff members transported him to the medical department, PA McCrystal examined his knee, prescribed ibuprofen for the pain, and directed a nurse to wrap the plaintiff's knee and

5

provide him with crutches. *See* Compl. at 6 ¶ 2. A Medical Incident Report and Nursing Sick Call note attached to the complaint indicate that PA McCrystal also referred the plaintiff for an x-ray of his left knee. *See id.* at 28, 35-36. Thus, PA McCrystal did not ignore the plaintiff's initial complaints of pain. As the court indicated in its prior order, "the plaintiff does not allege that he made PA McCrystal aware that he began to experience unbearable pain in his injured knee at some point during the evening of April 4, 2017, or that the pain had not abated as of the morning of April 5, 2017." *See* IRO at 8. There are no new facts to suggest that PA McCrystal was aware of the pain experienced by the plaintiff during the evening of April 4, 2017 or during the morning hours of April 5, 2017 before his transfer to UCONN, and failed to treat the plaintiff's pain. *See* IRO at 8. For these reasons and those stated in the previous order, the allegations in the First Notice do not state a plausible claim of deliberate indifference to medical needs against PA McCrystal and are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

**B.    Second Notice – First and Eighth Amendment Claims**

The Second Notice focuses on PA McCrystal's treatment of the plaintiff's symptoms after he underwent surgery at UCONN and had returned to MacDougall-Walker. *See* Notice, ECF No. 16, at 1. Attached to the Second Notice are several pages of the plaintiff's medical records covering the period from April 20, 2017 to May 10, 2017. *See id.*, Exs., ECF No. 16-1. The records reflect that PA McCrystal examined the plaintiff on May 1, 2017 due to his complaints of knee pain. *See id.* at 2. PA McCrystal did not observe any evidence of infection. *See id.* He noted that the plaintiff's temperature was within normal limits and that there was minor swelling in his knee. *See id.* He recommended that the plaintiff keep his knee elevated as much as possible and prescribed another type of pain reliever because the plaintiff complained

6

that Motrin had caused his stomach to become upset. *See id.* An unidentified medical provider examined the plaintiff on May 6, 2017 and placed him on the list to see a physician the following day. *See id.* at 1. On May 7, 2017, Dr. Naqvi examined the plaintiff's knee, observed that the knee was warm and that there was a decrease in the range of movement in the knee. *See id.* He noted left knee pain and the possibility that the knee might be infected. *See id.* He prescribed an antibiotic and an x-ray. *See id.*

The plaintiff contends that PA McCrystal should have diagnosed him as suffering from an infection when he examined his knee on May 1, 2017 because Dr. Naqvi prescribed medication to treat an infection six days later. The fact that on May 7, 2017, Dr. Naqvi noted the possibility that the plaintiff's knee had become infected and prescribed an antibiotic in case an infection was present does not indicate that PA McCrystal's opinion that no evidence suggesting an infection was present on May 1, 2017 constituted deliberate indifference. Rather, PA McCrystal did not observe symptoms that suggested an infection and made recommendations and prescribed medication to treat the symptoms that he did observe. At most, PA McCrystal's conclusion that the plaintiff's symptoms on May 1, 2017 were not suggestive of an infection rises to the level of negligence. Mere negligence, however, is not actionable under section 1983. *See Estelle,* 429 U.S. at 106 ("A [prisoner's] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Smith v. Carpenter,* 316 F.3d 178, 184 (2d Cir. 2003) ("Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a

7

constitutional violation."); *Johnson v. Wright,* 477 F. Supp. 2d 572, 576 (W.D.N.Y. 2007) ("That plaintiff may have preferred a more aggressive course of treatment, or more prompt surgery, does not show that defendants acted wantonly with the purpose of causing him pain"). The claim that PA McCrystal should have diagnosed the plaintiff as suffering from an infection when he examined his knee on May 1, 2017 is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

The plaintiff also suggests that the written grievance that he had filed regarding the treatment that PA McCrystal had provided him when he initially injured his knee prompted PA McCrystal to "deliberately" state that there was no "evidence of infection" on May 1, 2017. *See* Second Notice at 1. The court liberally construes this allegation as a claim of retaliatory conduct on the part of PA McCrystal.

A First Amendment claim requires "a plaintiff [to] allege facts admitting a plausible inference that the defendant's actions restricted, or were retaliation against, speech or conduct protected by the First Amendment." *Salmon v. Blesser*, 802 F.3d 249, 255 (2d Cir. 2015) (citing *Virginia v. Black,* 538 U.S. 343, 358 (2003) (stating that First Amendment protects "symbolic or expressive conduct" as well as "actual speech"); *Velez v. Levy,* 401 F.3d 75, 97 (2d Cir. 2005) (requiring that plaintiff's actions be "protected by First Amendment" to support First Amendment retaliation claim)). In order to state a claim for First Amendment retaliation, a plaintiff must allege facts showing "(1) that the speech or conduct at issue was protected, (2) that the defendant took an adverse action against [him or her], and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action." *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015) (internal quotation marks and citation omitted). The Second Circuit has "instructed district courts to approach prisoner retaliation

8

claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Id.* at 295 (internal quotation marks and citation omitted).

An inmate's filing of a grievance is protected activity. *See Davis v. Goord,* 320 F.3d 346, 352-53 (2d Cir. 2003); *Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996). Thus, the plaintiff has met the first prong of a First Amendment claim. The plaintiff's allegations, however, fail to meet the third prong or the causal connection requirement of a retaliation claim. The plaintiff did not file his health services grievance complaining about the treatment that he had received from PA McCrystal on April 4, 2017, until May 16, 2017. *See* First Notice at 4; Compl., ECF No. 1, at 7 ¶ 9 & at 12. PA McCrystal did not respond to the grievance until June 26, 2017. *See id.* Because the plaintiff filed the health services grievance after May 1, 2017, the date on which PA McCrystal examined the plaintiff and did not diagnose him as suffering from an infection, it could not have been the basis for any adverse action or deliberate indifference by PA McCrystal in treating the plaintiff on May 1, 2017. Thus, the plaintiff has not stated a retaliation claim against PA McCrystal regarding the written complaint he made against PA McCrystal on May 16, 2017.

In the concluding paragraph of his medical note from May 1, 2017, PA McCrystal reported that during the visit, the plaintiff had expressed concerns about the initial treatment of his knee injury. *See* Second Notice, Exs., ECF No. 16-1, at 1. According to this note, PA McCrystal attempted to explain the reasons for the initial course of treatment, but the plaintiff responded with accusations. *See id.* Even though PA McCrystal was aware of the plaintiff's

9

dissatisfaction with the prior treatment of his injury, there is nothing in the medical note regarding PA McCrystal's examination and treatment of the plaintiff's left knee on May 1, 2017, to suggest that PA McCrystal ignored the plaintiff's symptoms or that his medical opinion or recommendation for treatment was somehow based on a retaliatory or wanton motive. As indicated above, PA McCrystal did not refuse to treat the plaintiff. Rather, he acknowledged the plaintiff's complaints of pain, noted his temperature was 96.6, observed only a trace of swelling in the plaintiff's knee, recommended that the plaintiff keep the knee elevated, and prescribed medication to treat the plaintiff's pain symptoms. *See id.* at 2. Accordingly, the court concludes that the plaintiff has not stated a plausible claim of retaliation or deliberate indifference to medical needs in connection with the treatment provided to him by PA McCrystal on May 1, 2017, and both claims are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

There are no allegations in either the First Notice or the Second Notice to state a plausible Fourteenth Amendment claim against PA McCrystal based on his processing of the plaintiff's health services grievance. Nor does either Notice include allegations to state an Eighth Amendment claim against PA McCrystal for deliberate indifference to the knee injury the plaintiff sustained on April 4, 2017 or any symptoms that he may have experienced after his knee surgery. Furthermore, the allegations in the Second Notice do not state a plausible retaliation claim against PA McCrystal regarding his treatment of the plaintiff on May 1, 2017. Thus, to the extent that the First and Second Notices may be construed as amended complaints, the allegations against PA McCrystal, as contained in the Notices, are dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted. The case will proceed only as to the Eighth Amendment deliberate claims asserted in the complaint

against Correctional Officer Olivio and Correctional Officer Barrows in their individual capacities.

**Orders**

**(1)** To the extent the First Notice, [**ECF No. 15**], and the Second Notice, [**ECF No. 16**], may be construed as amended complaints, the Eighth Amendment deliberate indifference claim and the Fourteenth Amendment due process claim asserted against PA McCrystal in the First Notice and the First Amendment retaliation claim and the Eighth Amendment deliberate indifference claim asserted against PA McCrystal in the Second Notice are dismissed. *See* 28 U.S.C. § 1915A(b)(1). Pursuant to the court's IRO, [**ECF No. 14**], the case will proceed only as to the Eighth Amendment deliberate indifference to medical needs claims asserted in the complaint against Correctional Officer Olivio and Correctional Officer Barrows in their individual capacities.

**(2)** Within twenty-one (21) days of this Order, the Clerk shall prepare and mail a copy of the complaint, ECF No. 1, the IRO, ECF No. 14, and this order and a waiver of service of process request packet to Correctional Officer Olivio in her individual capacity at her current work address and shall prepare and mail a copy of the complaint, this order and a waiver of service of process request packet to Correctional Officer Barrows in her individual capacity at her current work address. On the thirty-fifth (35th) day after mailing, the Clerk shall report to the court on the status of each request. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

**(3)** Defendants Olivio and Barrrows shall file their response to the complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If the defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include all additional defenses permitted by the Federal Rules.

**(4)** Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within six months (180 days) from the date of this order. Discovery requests need not be filed with the court.

**(5)** All motions for summary judgment shall be filed within seven months (210 days) from the date of this order.

**(6)** The *Pro Se* Prisoner Litigation Office shall send a courtesy copy of the complaint, the IRO and this order to the Connecticut Attorney General and the Department of Correction Legal Affairs Unit.

**(7)** The Clerk is directed to mail a copy of this order to the plaintiff.

SO ORDERED at Hartford, Connecticut this fifth day of April, 2019.

                                                    /s/                        
                                    Michael P. Shea
                                    United States District Judge