UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| CURTIS JOHNNELL VINES,<br>    Plaintiff, | :<br>:<br>: |
| v. | :    Case No. 3:18cv1432(MPS) |
| KEVIN MCCRYSTAL, ET AL.,<br>    Defendants. | :<br>:<br>: |

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff, Curtis Johnnell Vines,[1] initiated this action by filing a civil rights complaint to assert claims that in April 2017, Physician Assistant McCrystal and Correctional Officers Olivo and Burrow were deliberately indifferent to his serious knee injury. *See* Compl., ECF No. 1.[2] Pending before the Court is a motion for summary judgment filed by Officers Olivo and Burrow[3] and a document filed by the plaintiff that has been docketed as a motion to compel. For the reasons set forth below, the Court will deny the motion to compel and will grant the motion for summary judgment.

---

[1] It is evident from the plaintiff's signature on the complaint and the application to proceed *in forma pauperis* that the plaintiff's middle name is spelled Johnnell rather than Johnell, as he spelled it in the caption of the complaint. *See* Compl., ECF No. 1, at 2,9; IFP, ECF No. 2, at 1, 3, 4. Accordingly, the Court directs the Clerk to edit the docket to reflect the correct spelling of the plaintiff's middle name as Johnnell.

[2] The plaintiff was confined at Cheshire Correctional Institution when he filed this action. On April 20, 2020, he filed a Notice indicating that officials would be discharging him from prison on April 30, 2020 and that his new mailing address would be 16 Jennings Way, Apartment C. *See* Notice, ECF No. 24. The Notice does not include the town or city in which the plaintiff resides. State of Connecticut Department of Correction records reflect that the plaintiff, Inmate No. 264846, is no longer confined in a prison facility within the Department of Correction. *See* http//:www.ctinmateinfo.state.ct.us.

[3] It is clear from the affidavits of Correctional Officers Olivo and Burrow filed in support of the motion for summary judgment that the complaint incorrectly identifies the last name of Officer Olivo as Olivio and the last name of Officer Burrow as Barrows. *See* Compl., ECF No. 1, at 2; Olivo Aff., ECF No. 34-4; Burrow Aff., ECF No. 34-5. Accordingly, the Court directs the Clerk to edit the docket to reflect the correct spelling of the last names of Officers Olivo and Burrow.

**I.     Background**

On November 19, 2018, after reviewing the complaint, the Court dismissed the claims seeking money damages from the defendants in their official capacities for violations of the plaintiff's federal constitutional rights and the claims seeking money damages from the defendants in their individual and official capacities for their negligent conduct pursuant to 28 U.S.C. § 1915A(b)(2); dismissed the request for a declaration that the defendants violated federal law and the request for a declaration that the defendants' alleged negligent conduct violated the plaintiff's rights under Connecticut law; and dismissed the Eighth and Fourteenth Amendment claims against Physician Assistant McCrystal in his individual capacity pursuant to 28 U.S.C. § 1915A(b)(1).  *See* Initial Review Order, ECF No. 7, at 12-13.  The Court concluded that the plaintiff had stated plausible Eighth Amendment claims of deliberate indifference to a medical need against Officers Olivo and Burrows in their individual capacities and permitted the plaintiff thirty days to file an amended complaint to address the deficiencies in the allegations asserted against Physician Assistant McCrystal as outlined in the Order.  *Id.* at 13.  In response, the plaintiff filed two Notices with attached exhibits.  *See* ECF Nos. 15, 16.

On, April 5, 2019, after liberally construing the Notices and exhibits as amended complaints, the Court dismissed the Eighth Amendment deliberate indifference claim and the Fourteenth Amendment due process claim asserted against McCrystal in the First Notice and dismissed the First Amendment retaliation claim and the Eighth Amendment deliberate indifference claim asserted against McCrystal in the Second Notice pursuant to 28 U.S.C. § 1915A(b)(1).  *See* Order, ECF No. 17.  The Court concluded that the case would proceed only as to the Eighth Amendment deliberate indifference to medical needs claims asserted in the

2

complaint against Correctional Officer Olivo and Correctional Officer Burrow in their individual capacities.  *Id.*

On September 30, 2019, Officers Olivo and Burrow filed an answer to the complaint.  On November 4, 2019, Officers Olivo and Burrow moved for summary judgment.  In response to the motion for summary judgment, the plaintiff has filed a memorandum and a motion to compel.

## II.      Standard of Review

When filing a motion for summary judgment, the moving party bears the burden of demonstrating "that there is no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

If a motion for summary judgment is supported by documentary evidence or sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the nonmoving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation."  *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted).  Thus, the party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact."  *Id.*

In reviewing the record, the court must "construe the evidence in the light most favorable to the non-moving party and … draw all reasonable inferences in its favor."  *Gary Friedrich Enters., L.L.C. v. Marvel Characters, Inc.*, 716 F.3d 302, 312 (2d Cir. 2013) (citation omitted).

The court may not, however, "make credibility determinations or weigh the evidence. . . . [because] [c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Proctor v. LeClaire*, 846 F.3d 597, 607–08 (2d Cir. 2017) (internal quotation marks and citations omitted).

Where one party is proceeding *pro se*, the court reads the *pro se* party's papers liberally and interprets them "to raise the strongest arguments that they suggest." *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) (internal quotation marks and citation omitted). Despite this liberal interpretation, however, allegations unsupported by admissible evidence "do not create a material issue of fact" and cannot overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

## II.    Facts

The relevant facts are taken from the defendants' Local Rule 56(a)1 Statement ("Defs.' L.R. 56(a)1"), [ECF No. 34-3], and Attachments A and B, [ECF Nos. 34-4, 34-5], filed in support of the Local Rule 56(a)1 Statement. Local Rule 56(a)2 requires the party opposing a motion for summary judgment to file a Local Rule 56(a)2 Statement which contains separately numbered paragraphs corresponding to the Local Rule 56(a)1 Statement and indicates whether the opposing party admits or denies the facts set forth by the moving party. *See* Local Rule 56(a)2(i). The plaintiff did not file a Local Rule 56(a)2 Statement in opposition to the defendants' Local Rule 56(a)1 Statement. Accordingly, the facts that are asserted in the Local Rule 56(a)1 Statement and that have evidentiary support are deemed admitted. *See* Local Rule 56(a)1 ("Each material fact set forth in the Local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless controverted by the

4

Local Rule 56(a)2 Statement required to be filed and served by the opposing party in accordance with this Local Rule. . . .").[4] Because the Complaint, [ECF No. 1], includes a signed and dated verification stating that the contents are true under penalty of perjury, the Court also considers the allegations asserted in it that are based on the plaintiff's personal knowledge. *See Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) ("[A] verified pleading ... has the effect of an affidavit and may be relied upon to oppose summary judgment.").

On April 4, 2017, at approximately 9:45 a.m., the plaintiff injured his left knee playing basketball at MacDougall-Walker Correctional Institution ("MacDougall-Walker"). Defs.' L.R. 56(a)1 ¶¶ 1, 3, Compl. at 28. Officers transported the plaintiff to the medical department in a wheelchair. *Id.* ¶ 4; Compl. at 28. Nurse Burns and Physician Assistant McCrystal examined the plaintiff and noted that his knee was swollen and that he could not bear weight on it. Compl. at 35-36. McCrystal prescribed pain medication, crutches, and ice, referred the plaintiff for an x-ray of his left knee, and instructed Nurse to wrap the plaintiff's knee in an ace bandage. *Id.* ¶¶ 4-5; Compl. at 6, 35-36. After receiving treatment from Nurse Burns and Physician Assistant McCrystal, correctional officers escorted the plaintiff back to his cell. *Id.* ¶ 6.

That evening, Correctional Officer Olivo was assigned to the plaintiff's housing unit as a control officer. *Id.* ¶¶ 7-8. At some point between 4:30 p.m. and 5:00 p.m., during service of the dinner meal, the plaintiff approached Officer Olivo in the control booth, informed her that he had hurt his leg, and asked her to contact the medical department. *Id.* ¶ 11; Compl. at 6, 17, 19. Officer Olivo called the medical department to inform a staff member of the plaintiff's request to be seen by a medical provider because he had injured his leg. *Id.* ¶ 12. Officer Olivo learned

---

[4]The Defendants have filed the notice required by this Court's rules governing motions

that the plaintiff had been treated for his injury earlier that day and was told by the medical department that "there was nothing else they could do for him[] that evening." *Id.* Officer Olivo related this information to the plaintiff. *Id.* ¶ 13.

During the evening of April 4, 2017, Correctional Officer Burrow was assigned to the plaintiff's housing unit as a rover. *Id.* ¶¶ 7-8. Officer Burrow does not remember a specific conversation involving a request by the plaintiff to be sent to the medical department. *Id.* ¶ 9. Pursuant to Department of Correction policy, contact with the medical department regarding an inmate's request for treatment is made by the control officer assigned to the inmate's housing unit. *Id.* ¶ 10. As a rover assigned to the plaintiff's housing unit on April 4, 2017, Officer Burrow was not responsible for contacting the medical department regarding the plaintiff's request to be seen by a medical provider. *Id.* If the plaintiff had requested that Officer Burrow contact the medical department, she would have related that request to the control officer. Burrow Aff. ¶ 6, ECF No. 34-5.

During the morning of April 5, 2017, a nurse examined the plaintiff. Compl. at 51. At approximately 9:20 a.m., the plaintiff underwent x-rays of his left knee. Defs.' L.R. 56(a)1 ¶ 14. The x-rays reflected a transverse fracture through the upper third of the plaintiff's left patella. Compl. at 48-49. At approximately 10:20 a.m., pursuant to an order of a medical provider at MacDougall-Walker, correctional officers transported the plaintiff to the University of Connecticut Health Center ("UCONN") for treatment. Defs.' L.R. 56(a)1 ¶ 15; Compl. at 26, 42-43, 51. Later that day, a surgeon performed an open reduction and internal fixation of the plaintiff's left patella fracture. Compl. at 65-66. The plaintiff remained at UCONN for three

---

for summary summary judgment filed against self-represented litigants. See ECF No. 34-2.

days. *Id.* at 51, 65-66, On April 7, 2017, he returned to MacDougall-Walker and a nurse admitted him to the infirmary to recover from the surgical repair of his left patella. *Id.* at 51.

### III.  Discussion

Officers Olivo and Burrow argue that the plaintiff has failed to meet either the objective or the subjective component of the Eighth Amendment standard.  The plaintiff, in an unsigned memorandum in opposition to the motion for summary judgment, contends that he made both defendants aware of his painful knee injury and that they failed to take steps to contact the medical department in order to facilitate the provision of medical treatment for his injury.  *See* Mem. Opp'n Mot. Summ J., ECF No. 42.  As a preliminary matter, the Court will address the document filed by the plaintiff that is titled "Ammend Summary Judgment" and has been docketed as a motion to compel.  *See* ECF No. 30.

#### A.  Motion to Compel [ECF No. 43]

The plaintiff seeks the Court's assistance in conducting further discovery to secure surgical reports and "an expert opinion" from the surgeon who operated on his fractured patella at UCONN on April 5, 2017.  The plaintiff claims that he has been unable to retrieve these reports himself because it is his understanding that UCONN will only provide copies of the reports to attorneys and family members and he has no family members.  The plaintiff states that he needs a copy of the surgical report to determine whether the less-than-twenty-four-hour delay in receiving further treatment for pain after he initially injured his knee exacerbated the condition subsequently diagnosed by a physician as a fractured patella.  He contends that he had to walk around during the time period between injuring his knee on April 4, 2017 and his transfer to UCONN on the morning of April 5, 2017 and suggests that walking around may have caused

further damage to his knee.

The motion is unsigned.  Thus, it does not comply with Rule 11(a) of the Federal Rules of Civil Procedure.  Even if the Court were to consider the unsigned motion as having been filed pursuant to Rule 56(d), Fed. R. Civ. P., it does not meet the requirements of the rule.  Rule 56(d) of the Federal Rules of Civil Procedure provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) defer considering the motion or deny it;
>
> (2) allow time to obtain affidavits or declarations or to take discovery; or
>
> (3) issue any other appropriate order.

Rule 56(d), Fed. R. Civ. P.  The declaration or affidavit filed in support of a request under Rule 56(d), must include "'the nature of the uncompleted discovery; how the facts sought are reasonably expected to create a genuine issue of material fact; what efforts the affiant has made to obtain those facts; and why those efforts were unsuccessful.'"  *Whelehan v. Bank of Am. Pension Plan for Legacy Companies-Fleet-Traditional Ben.*, 621 F. App'x 70, 73 (2d Cir. 2015) (summary order) (quoting *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994)).

The plaintiff has not filed a declaration or affidavit to support his contention that he is unable to present evidence or facts that are "essential to justify [his] opposition" to the defendants' motion for summary judgment.  In fact, the plaintiff is not sure that any evidence exists to support his opposition to the motion for summary judgment.

In its April 5, 2019 Order, the Court set a deadline for the parties to complete discovery within six months of the date of the order.  *See* ECF No. 17.  The plaintiff did not move to extend

8

that deadline and the Court did not otherwise extend the deadline for completion of discovery by the parties. Furthermore, the Court does not find the plaintiff's allegation that he was unable to retrieve copies of the surgeon's report or contact the surgeon to request a report to be credible. The plaintiff attached multiple medical records from UCONN to his complaint, including a discharge summary from his stay at UCONN from April 5-7, 2017, which describes the surgical procedure that he underwent to repair his fractured patella. *See* Compl. at 40, 42-47, 50, 65-66. Moreover, the plaintiff neglects to indicate who he contacted at the Department of Correction or UCONN to request a copy of the surgical report or when he submitted his request or requests and does not attach a copy of any letter denying his request or requests to his motion.[5]

Nor has the plaintiff explained how any information in the surgeon's report would create a genuine dispute as to a material fact related to his Eighth Amendment claim against the defendants. Although he contends that he had to walk around during the time period between injuring his knee on April 4, 2017 and his transfer to UCONN on April 5, 2017 and suggests that walking around may have caused further damage to his knee, he concedes, and his medical records reflect, that correctional staff transported him in a wheelchair from the gym to the medical department after he sustained the injury to his knee and that after examining him, medical staff members provided him with ice, two ace bandages, and crutches. *See id.* at 6, 28, 35-36. There are not facts to suggest that the plaintiff did not use the crutches to ambulate and to refrain from putting any weight on his injured knee. Thus, his claim that he was required to walk around on his injured knee prior to being transported to UCONN is not supported by the facts in

---

[5] It is evident from the UCONN website that a patient may seek copies of his or her medical records by completing and submitting an "Authorization to Obtain and/or Disclose Health Information" form. Information pertaining to medical records requests, this form, and where the form must be sent or

9

the complaint or exhibits attached to it. Furthermore, the claim asserted against Officers Burrow and Olivo is not that they forced or required him to walk and put weight on his injured knee but that they did not facilitate the provision of medical treatment by someone in the medical department in response to his complaints of knee pain.

The allegations asserted in the unsigned motion do not permit the Court to conclude that the plaintiff had insufficient time during the discovery period to request and receive a copy of the surgeon's report documenting the procedure performed on his left patella. Nor did the plaintiff bring to the Court's attention any difficulty that he might have had in retrieving the report prior to filing this motion. Furthermore, the plaintiff has not demonstrated that if permitted to proceed with further discovery, he could uncover material that would create a genuine dispute as to a fact that is material to his claim against defendants Olivo and Burrow. Thus, he cannot rely on Fed. R. Civ. P. 56(d) to defeat or further delay summary judgment. The motion seeking to compel or conduct further discovery is denied.

### B. <u>Defendants' Motion for Summary Judgment [ECF No. 34]</u>

The Eighth Amendment prohibits deliberate indifference to an inmate's serious medical need or medical condition by medical staff members as well as correctional staff members. *See Estelle v Gamble*, 429 U.S. 97, 104 (1976) (deliberate indifference may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed"). An inmate must meet two elements to state a claim that a custody official or medical provider was deliberately indifferent to his medical needs. The objective element

---

submitted may be found at: https://health.uconn.edu/plan-your-visit/patient-resources - Medical Records/Health Information Management.

requires the inmate to assert facts to demonstrate that his medical need or condition is serious. *Hill v. Curcione*, 657 F.3d 116, 122–23 (2d Cir. 2011) (a serious medical need contemplates "a condition of urgency" such as "one that may produce death, degeneration, or extreme pain") (internal quotation marks and citation omitted).

In determining the seriousness of a medical condition, the Court considers whether "a reasonable doctor or patient would find [it] important and worthy of comment," whether the condition "significantly affects an individual's daily activities," and whether it causes "chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citations omitted).  If a prisoner alleges "a temporary delay or interruption in the provision of otherwise adequate medical treatment," rather than a denial of any treatment for his or her condition, "it is appropriate to focus on the challenged *delay* or *interruption* in treatment rather than the prisoner's *underlying medical condition* alone in analyzing whether the alleged deprivation is, in 'objective terms, sufficiently serious,' to support an Eighth Amendment claim." *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003) (emphasis in original) (quoting *Chance*, 143 F.3d at 702).

The second element – deliberate indifference – is subjective.  To meet this element, the inmate must allege that the prison official or medical provider was actually aware that his or her actions or inactions would cause a substantial risk of serious harm.  *See Hill*, 657 F.3d at 122 ("[T]he official must 'know[ ] of and disregard[ ] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" ) (quoting *Farmer v. Brennan,* 511 U.S. 825, 837 (1994).  Mere negligent or inadvertent conduct, however, does not constitute deliberate indifference.  *See Estelle*, 429 U.S. at 105-06 (Deliberate indifference requires a greater showing

11

than simply "an inadvertent failure to provide adequate medical care" or "negligen [ce] in diagnosing or treating a medical condition.").

### 1. Objective Element

The plaintiff's claim against Officers Olivo and Burrow is one of a temporary delay in the provision of treatment in response to his complaints that the injury to his knee caused him pain during the evening and night of April 4, 2017. Because the plaintiff has alleged a delay in medical treatment, the court examines examine both the seriousness of the plaintiff's underlying medical condition and the harm caused by any unreasonable delay in facilitating treatment for the pain caused by the delay. *See Smith*, 316 F.3d at 185.

Officers Olivo and Burrow do not contest that the plaintiff suffered a serious injury to his knee. Rather, they contend that the delay in addressing the pain that he suffered during the evening and night of April 4, 2017 did not cause a serious risk of harm to his health or exacerbate the underlying injury to his knee. The parties do not dispute that neither Officer Olivo nor Officer Burrow is a medical provider. Nor do they dispute that a nurse and a physician assistant examined and treated the plaintiff's injury to his knee shortly after he incurred the injury at 9:45 a.m. on April 4, 2017. The physician assistant prescribed pain medication, crutches, and ice, instructed a nurse to wrap the plaintiff's knee in an ace bandage, and referred the plaintiff for an x-ray of his left knee. The plaintiff did not undergo x-rays of his knee until the morning of April 5, 2017.

The plaintiff contends that between 4:30 p.m. and 5:00 p.m. on April 4, 2017, he spoke to Officer Olivo and requested that she call the medical department because he was experiencing pain in the knee that he had injured earlier that day. At another point during that evening or

night, the plaintiff requested that Officer Burrow contact the medical department. The plaintiff states that he spent the whole night in pain and could not sleep. He describes the pain as the worst pain that he has ever felt in his life.

The plaintiff concedes, and his medical records reflect, that he was seen by a nurse during the morning of April 5, 2017 in response to his complaints of left knee pain and that he underwent x-rays of his left knee at 9:20 a.m. He does not allege that he sought pain medication at that time. The x-rays documented a fracture of his left patella. At approximately 10:20 a.m., officers transported the plaintiff to UCONN for treatment pursuant to an order of a medical provider at MacDougall-Walker. Thus, at most, the plaintiff was not examined or provided treatment in response to his complaints of pain from 4:30 p.m. on April 4, 2017 to 9:20 a.m. on April 5, 2017, a period of 17 hours.

The defendants argue that the period of delay was not prolonged and that there are no facts or evidence to suggest that the delay exacerbated the fracture to the plaintiff's patella or caused him to suffer any other adverse medical consequences. The plaintiff's medical records demonstrate that no complications arose during the surgical procedure to repair his fractured patella or during the few days that he remained at UCONN as he recovered from the procedure. *See* Compl. at 51, 54, 65-66. A physician discharged the plaintiff from UCONN on April 7, 2017 to MacDougall-Walker in good condition and provided a specific post-operative plan to assist in the plaintiff's full recovery from the surgical procedure. *Id.* at 65-66.

Although the plaintiff's injury was subsequently diagnosed as a patellar fracture, there are no facts or evidence to suggest that it was a potentially life-threatening or fast-degenerating condition. Furthermore, the plaintiff's exposure to pain from the injury, although described by

13

the plaintiff as pain unlike any that he had previously experienced, was short-term.  Given these undisputed facts, the temporary delay in the examination or treatment of the plaintiff by a medical staff member during the night of April 4, 2017 and the early morning hours of April 5, 2017 does not meet the objective, seriousness component of the Eighth Amendment standard. *See, e.g.*, *Matthews v. New York State Dep't of Corr. & Cmty. Supervision*, No. 9:17-CV-00503, 2020 WL 1030647, at *10 (N.D.N.Y. Mar. 3, 2020) ("Matthews does not assert that the [12-day] delay in providing him with his diabetes medication involved a life-threatening situation, exacerbated his diabetes, caused him prolonged pain or discomfort, or that the delay was likely to cause serious illness and needless suffering in the future."); *Darby v. New York City Health & Hosps. Corp.*, No. 18-cv-2869 (BMC)(VMS), 2019 WL 1994490, at *4–5 (E.D.N.Y. May 6, 2019) ("The key as to either gap of time is not that plaintiff experienced pain for a longer amount of time that he might have otherwise because of these two periods of two-month delays, it is whether the facts of those delays, standing alone, can plausibly be said to have created an unreasonable risk to plaintiff's future health, which plaintiff has not alleged."), *appeal pending*, No. 19-2084 (2d Cir. July 2, 2019); *Fernandini v. United States*, 15 Civ. 3843, 2017 WL 3208587, at *9 (S.D.N.Y. July 26, 2017) ("The allegations in the [complaint] do not suggest that the three-day delay in receiving medical treatment was 'needlessly prolonged.' While the Court accepts as true that Plaintiff felt pain from the bite, and that he experienced 'a burning sensation and numbness radiating up his arm and down to his hand,' nothing in the [complaint] suggests that the three-day wait time caused 'chronic and substantial pain' or worsened Plaintiff's condition."); *Ferguson v. Cai*, No. 11-cv-6181, 2012 WL 2865474, at *4 (S.D.N.Y. Jul 12, 2012) (blindness, pain, and leg swelling experienced by inmate over at least eight-hour period due to

14

officer's failure to escort inmate to medical clinic to receive dose of insulin not objectively serious because symptoms were neither prolonged or extreme and delay did not cause underlying diabetes condition to worsen or "materially alter the way in which his disease . . . affected" inmate in the future); *Rodriguez v. Mercado,* No. 00 Civ. 8588 (JSRFM), 2002 WL 1997885, *6-7, 24 (S.D.N.Y. Aug. 28, 2002) (no serious injury where plaintiff claimed that excessive force caused bruising and headaches, was given Tylenol several hours later and saw doctor next day).

### 2. Subjective Component

Defendants Olivo and Burrow argue, in addition, that they were not deliberately indifferent to the plaintiff's request to be seen by someone in the medical department. As indicated above, it is undisputed that neither Officer Olivo nor Officer Burrow was involved in the treatment provided to the plaintiff immediately after he injured his knee during the morning of April 4, 2017, including pain medication, ice, crutches and an ace bandage, or the decision not to immediately arrange for him to undergo an x-ray of his knee.

Officer Olivo avers that during the evening of April 4, 2017, she contacted the medical department in response to the plaintiff's complaint that he was experiencing pain in his leg. Defs.' L.R. 56(a)1, Attach. A, Olivo Aff. ¶¶ 4-5. She learned that the plaintiff had been treated for his knee injury earlier that day and that the medical department would not be providing further treatment to him that evening. *Id.* ¶ 5. She related this information to the plaintiff. *Id.* The plaintiff contends that he did not see Officer Olivo contact the medical department in response to his request and suggests that the telephone call log that is maintained by the control officer on every shift would show that Officer Olivo did not make a call to the medical department on his behalf on the evening of April 4, 2017. Pl.'s Mem. Opp'n Mot. Summ. J.,

15

[ECF No. 42], at 2. The plaintiff has not, however, submitted a copy of this log to support his contention, despite having received an opportunity to request this document during the discovery process. He has offered no other admissible evidence to contradict Officer Olivo's affidavit.

Officer Burrow avers that she was tasked as the rover in the plaintiff's unit on the evening of April 4, 2017, and that her primary duty was to conduct tours of the unit. Defs.' L.R. 56(a)1, Attach. A, Burrow Aff. ¶ 4. As a rover, she was not responsible for contacting the medical department directly on behalf of inmates. *Id.* That responsibility belonged to the control officer assigned to the unit. *Id.* ¶ 6. Officer Burrow avers that she does not remember that the plaintiff asked her to contact the medical department that evening. *Id.* ¶ 5. Furthermore, if in fact the plaintiff had contacted her about his injury, she would have referred his request to the control officer. *Id.* ¶ 6. The plaintiff states that he "upheld" the video footage of the evening of April 4, 2017 and suggests that the video footage would show that he stopped Officer Burrow as she was performing her "count" of the inmates in the housing unit that evening or night. Pl.'s Mem. Opp'n Mot. Summ. J., [ECF No. 42], at 1-2. The plaintiff has not submitted that video footage in opposition to the motion for summary judgment. Thus, the plaintiff has offered no admissible evidence to contradict the affidavit of Officer Burrow regarding her responsibilities, as a rover during the evening and night of April 4, 2017, and what action she would have taken in response to any request to be seen by a medical provider that he may have made to her.

Construing the evidence and the reasonable inferences to be drawn from the evidence, including the allegations in the verified complaint, in the light most favorable to the plaintiff, as required on summary judgment, I find that the plaintiff has not raised a genuine dispute of material fact to demonstrate that Officer Burrow or Officer Olivo were aware of and recklessly

or consciously disregarded "a substantial risk of serious harm" to his health in responding to his complaints of pain in his knee during the evening and night of April 4, 2017. *Hill*, 657 F.3d at 122, *see also Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) ("[R]ecklessness entails more than mere negligence; the risk of harm must be substantial and the official's actions more than merely negligent.") (citations omitted).  Accordingly, no reasonable jury could find that either Officer Burrow or Officer Olivo possessed the culpable state of mind necessary to satisfy the subjective component of the Eighth Amendment standard. *Id.* ("Subjectively, the official charged with deliberate indifference must act with a sufficiently culpable state of mind.) (internal quotation marks and citation omitted).

The defendants have demonstrated the absence of a genuine dispute as to any material fact related to the objective element and the absence of a genuine dispute as to any material fact related to the  subjective element of the Eighth Amendment deprivation of medical treatment claim asserted against them and that they are entitled to judgment as a matter of law. Accordingly, the motion for summary judgment is granted on the ground that neither Officer Olivo, nor Officer Burrow was deliberately indifferent to the plaintiff's requests to be seen by a staff member in the medical department to address his complaints of pain in his left knee made during the evening and night of April 4, 2017.

## IV. Conclusion

The Clerk is directed to edit the docket to reflect that: the plaintiff's middle name is spelled Johnnell, Correctional Officer Olivo's last name is spelled Olivo, and Correctional Officer Burrow's last name is spelled Burrow.  The plaintiff's Motion to Compel, [**ECF No. 43**] is **DENIED** and the Motion for Summary Judgment filed by Officers Olivo and Burrow, [**ECF**

**No. 34**], is **GRANTED**.  The Clerk is directed to enter judgment for the defendants and close this case.

      SO ORDERED at Hartford, Connecticut this 19th day of August, 2020.

                                        _____  
                                        Michael P. Shea  
                                        United States District Judge